Case 1:24-cv-00155   Document 18   Filed on 09/12/25 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
September 12, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| MELISSA GARCIA FOR R.G., § | |
|     Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 1:24-cv-155 |
| § | |
| FRANK BISIGNANO,[1] § | |
| *as Commissioner of Social Security,* § | |
|     Defendant. § | |

## REPORT AND RECOMMENDATION IN SUPPORT OF REMAND TO SOCIAL SECURITY ADMINISTRATION

**I. Synopsis**

Melissa Garcia's ("Plaintiff"), son, R.G. was denied social security benefits. R.G. is a juvenile diagnosed with autism spectrum disorder and attention deficit hyperactivity disorder. Until reaching high school, R.G. received instructive assistance in the classroom and was moderately successful. When those supportive structures were removed, R.G. declined significantly and ultimately left the public school system after his disruptive behaviors and lack of support made formal education practically unattainable. Ms. Garcia argues on behalf of her son that if the Administrative Law Judge ("ALJ") had appropriately reviewed the evidence, it would show that R.G. has limitations which impact his functioning across the following relevant domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting with others, and (4) caring for oneself. This Court recommends reversal of the Commissioner of Social Security's ("Commissioner") decision denying R.G. benefits and remand for further development of the record consistent with the totality of this recommendation.

**II. Jurisdiction**

This Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner for claims arising under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A). Venue is appropriate, because R.G. resides in Cameron County, Texas.

---

[1] Frank Bisignano is now the Commissioner of Social Security and should be substituted as Defendant, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

42 U.S.C. § 405(g); 28 U.S.C. § 124(b)(6). Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge to conduct all pretrial proceedings. Dkt. No. 5.

### III. Standard of Review

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the relevant legal standards were applied in reaching this decision. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). When applying the substantial evidence standard, it is not to "reweigh the evidence in the record, not try the issues de novo, not substitute [its] judgment for that of the [Commissioner's]." *Johnson v. Bowen*, 864 F.2d 340, 343. Additionally, "[c]onflicts within the evidence are not for the court to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The ALJ's decision must stand or fall on the rationale set forth in the ALJ's opinion. *Newton v. Apfel*, 209 F.3d 455, 458 (5th Cir. 2000). If the Commissioner's findings are supported by substantial evidence, the findings are conclusive and so must be affirmed. 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

### IV. Disability Determination Process

The Social Security Act provides for Supplement Security Income benefits to be paid to eligible individuals based on age or disability, with certain income restrictions. *See* 42 U.S.C. §§ 1381a, 1382(a). The determination of disability for individuals under the age of 18 requires a showing of "a medically determinable physical or mental impairment, which results in marked and severe functional limitations." *Id.*; § 1382c(a)(3)(C)(1). Any mental or physical impairment must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.*; § 1382c(a)(3)(D).

Disability claims for individuals under 18 years of age involve a three-step analysis: (1) whether the child has engaged in substantial gainful activity as of the disability onset date; (2) if

not, whether the child has a medically "severe" impairment or combination of impairments; and (3) if so, whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of one of the impairments listed under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924(b)-(d). The claimant bears the burden of proof at all three steps. *See Holliday ex rel. D.H. v. Saul*, No. CV H-18-1412, 2019 WL 3323748, at *6 (S.D. Tex. July 9, 2019), *report and recommendation adopted sub nom*; *Holliday a/n/f of D.H. v. Saul*, No. CV H-18-1412, 2019 WL 3318559 (S.D. Tex. July 24, 2019) (citing *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991)).

Under the third step, the ALJ determines functional equivalence by evaluating the "whole child" and considering the child's actual functioning in all settings. S.S.R. 09-1P, 2009 WL 396031, at *2 (2009). When doing so, the ALJ evaluates six domains:

(1) "acquiring and using information,

(2) attending and completing tasks,

(3) interacting and relating with others,

(4) moving about and manipulating objects,

(5) caring for [one]self, and

(6) health and physical well-being."

20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established if the ALJ finds "marked" limitations in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation is "more than moderate" but "less than extreme," and "interferes seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R.§ 416.926a(e)(2)(i). An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

In making this assessment, the ALJ must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments. 20 C.F.R § 416.926a. Relevant regulations and Social Security Rulings guide the ALJ to find that the more support a child receives, the less independently they function and the more severe the Commissioner will find the limitation to be. The Commissioner "will generally find that such a child has *a limitation.*" SSR 09–2p, 2009 WL

396032, at *5 (emphasis added); *see also* SSR 09–1p, 2009 WL 396031, at *6 ("Such a child will have *a limitation,* even if he is functioning well with the help or support.").

## V. Background

### a. Administrative Procedural History

Plaintiff filed an application for Supplemental Security Income on behalf of her son R.G. on September 15, 2021. Dkt. No. 7, pp. 168-174.[2] Plaintiff alleges an onset date of September 18, 2012. *Id.* The record also supports that sometime between 2013 and 2018 R.G. was receiving some benefits through Social Security, but a change in Plaintiff's income resulted in the termination of benefits. Dkt. No. 7, p. 229. After the Commissioner denied the initial application, an Administrative Law Judge held a hearing on April 11, 2024. Dkt. No. 7, pp. 24-64.

On May 13, 2024, the ALJ determined that R. G. was not disabled. Dkt. No. 7, pp. 11-23. Plaintiff appealed the ALJ's decision with the Appeals Council. Dkt. No. 12, pp. 6-10. The Appeals Council denied further review and found no regulatory reason to review the ALJ's decision. *Id.* The ALJ's decision became the Commissioner's final decision in August 2024 when the Appeal's Council denied Plaintiff's request for review. Accordingly, all available administrative remedies have been exhausted, and this case is ripe for judicial review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). On October 23, 2024, this cause was initiated pursuant to 42 U.S.C. § 405(g), seeking to reverse the negative determination of the commissioner. Dkt. No. 2. Plaintiff proceeds *in forma pauperis*. Dkt. No. 6.

### b. Factual History

R. G. was fourteen years old on his protected filing date of September 15, 2021. Dkt. No. 7, p. 168. At the time of filing, Plaintiff identified prior diagnoses for R. G. of autism spectrum disorder and attention deficit hyperactivity disorder for which he has taken medication to help manage symptoms. Dkt. No. 7, pp. 194-196. While in elementary and middle school, R. G. received specialized education and behavioral accommodation to facilitate his learning. Dkt. No. 7, p. 229. Plaintiff identified R. G. had difficulty with social activities in school and his academic/behavior was dependent on "certain teachers" and "if he likes the subject." Dkt. No. 7, p. 205. Early in his transition to high school, where he did not receive supportive interventions, R. G. had to withdraw from high school, because "he said a joke[,] and the admin[istration]

---

[2] The citation to the record refers to the Bates-stamped number on each record page.

considered it a threat when a student reported him." Dkt. No. 7, p. 234.  R. G. was last evaluated by his school in April 2021, which reported, consistent with Plaintiff's report, that R. G. had difficulties communicating with his teachers and peers. Dkt. No. 7, pp. 336-351.

### c. Medical Evidence Reviewed

As a part of the disability determination process, state agency consultants, Drs. Carper and Tamez, performed consultative psychological examinations of R. G. at the request of the Commissioner.  Dkt. No. 7, pp. 466-477 (Evaluation of Dr. Carper); Dkt. No. 7, pp. 533-537 (Evaluation of Dr. Tamez). Dr. Carper evaluated R. G. in 2022 to evaluate his intellectual and emotional function. *Id.* Dr. Carper's professional opinion is that R. G. would benefit from special education services, because he has "a serious impairment in relating to others, both in and out of the school setting" and "has difficulty in communicating and interacting with others appropriately in a socially acceptable way." Dkt. No. 7, pp. 475.  Related to R. G.'s assessed functional capacity, Dr. Carper opined that R. G. "does not function effectively in an age-appropriate fashion compared to peers in acquiring/using information and in attending and completing tasks. He does have difficulty interacting with others." Dkt. No. 7, pp. 476-477.  In 2023, Dr. Tamez conducted an in-person mental status examination and clinical interview with R. G. and Plaintiff. Dkt. No. 7, pp. 533-537.  Dr. Tamez opined that "[R. G.] is experiencing difficulties functioning independently with cognitive, social, academic, and self-care tasks." Dkt. No. 7, p. 537.  As to his functional capacity, Dr. Tamez found moderate impairment in R. G.'s ability to interact and relate to others and minimal impairment of his functional capacity in the domains of acquiring and using information and attending to and completing tasks. Dkt. No. 7, p. 537.

R. G.'s record was also reviewed by two non-examining psychologists, Dr. Martin Koretzky and Dr. Karla Delcour, who found R. G. has the severe mental impairments of autism spectrum disorder, attention deficit/hyperactivity disorder and depressive, bipolar and related disorders.  Dkt. No. 7, pp. 69 & 75.  Both doctors determined R. G.'s severe mental impairments cause less-than-marked limitations in the following domains: (1) acquiring and using information, (2) attending and completing tasks, and (3) interacting and relating with others. Dkt. No. 7, pp. 69 & 75.

## VI. Commissioner's Decision

Using the Social Security Administration's established three-step sequential evaluation process for determining whether a minor child is disabled, the ALJ determined R. G. was not disabled within the meaning of the Act. Dkt. No, 7, p. 19.

The ALJ made the following findings relevant to the issue on appeal:

(1) The claimant was born on September 13, 2007. Therefore, he was an adolescent on September 15, 2021, the date the application was filed, and is currently an adolescent (20 C.F.R. 416.926a(g)(2)) as of the date of the decision, May 13, 2024.

(2) The claimant has not engaged in substantial gainful activity since September 15, 2021, the application date (20 C.F.R. 416.924(b) and 416.971 et seq.).

(3) The claimant has the following severe impairments: autism spectrum disorder and attention deficit hyperactivity disorder (ADHD) (20 C.F.R. 416.924(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.924, 416.925 and 416.926).

(5) The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 C.F.R. 416.924(d) and 416.926a) as they relate to R. G.'s ability to acquire and use information, attend to and complete tasks, interact and relate with others and care for himself.

(6) The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since September 15, 2021, the date the application was filed (20 C.F.R. 416.924(a)).

*See* Dkt. No. 7, pp. 11-23.

## VII. Analysis

On appeal is whether the ALJ applied the relevant legal standards and whether substantial evidence supports the ALJ's findings. Dkt. Nos. 2, 13. Plaintiff argues the "ALJ misapplied the 'whole child approach' when rating R. G.'s impairments during the functionally equals assessment." Dkt. No. 13, p. 16. More specifically, Plaintiff urges that the ALJ misapplied the relevant legal standards in the domains statutorily numbered as (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, and (5) caring for himself. Dkt. No. 13, pp. 16-28. The Commissioner responds that "substantial evidence

supports the RFC (residual functional capacity) assessment," and "[a]lthough Plaintiff may not agree with [the Commissioner's] decision, the final responsibility for the determination of an individual's RFC and the ultimate question of whether an individual is 'disabled' under the Act are issues reserved to the Commissioner pursuant to 20 C.F.R. §416.927(d)." Dkt. No. 17, p. 12.

As an initial matter the Court notes Plaintiff and R. G. appeared *pro se* at their hearing before the ALJ. Dkt. No. 7, pp. 24-64 (Hearing Transcript). Consequently, all testimony elicited at the oral hearing is a result of questions posed by the ALJ. The ALJ notes the following in his decision: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the allegations concerning the intensity, persistence and limiting effects of these *symptoms are not entirely consistent* with the medical evidence and other evidence in the record." Dkt. No. 7, p. 14 (emphasis added).

The Court finds the ALJ did not fully consider the circumstance that, because of his impairments, R. G. was unable to successfully attend high school and manage deficits without the supports he received in elementary and middle school. The regulations require the ALJ to consider the effects of structured or supportive settings. *See* 20 C.F.R § 416.924a(b)(5)(iv). The Court does not imply that an ALJ commits legal error when they fail to consider all the factors listed in § 416.924a(b). However, when, as here, the claimant has an impairment that appears to cause significant limitation of functioning in a given domain, the ALJ will need to more closely review the pertinent factors to support his finding that the degree of limitation is not marked, i.e., at least two, but less than three, standard deviations below the mean. *See* 20 C.F.R. § 416.926a(e)(2); *Price v. Astrue*, 401 Fed. App'x. 985, 986 (5th Cir. 2010) ("The ALJ does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final determination.").

While the ALJ frequently notes the use of supports for R. G., he fails to create a logical bridge between the severity of R. G.'s symptomatology and the use of said supports. The ALJ does not acknowledge the pervasive problems Plaintiff has managing R. G.'s conditions when no support is given. For example, in the domain of "acquiring and using information," the ALJ reviews that R. G. has a history of receiving special education and accommodation for autism spectrum disorder which include reminders about foul language and school appropriate behaviors from at least December 2015 to August 2022 with then-recent "grades reported to be As and Bs."

Dkt. No. 7, p. 15.  By the time the ALJ writes his opinion in 2024, R. G. stopped receiving support and Plaintiff explained that R. G. had to be withdrawn from school, because "He said a joke[,] and the admin[istration] considered it a threat when a student reported him." Dkt. No. 7, pp. 234, 239. The record supports this comment led to R. G.'s withdrawal from the educational setting, which came only three weeks into his high school transition and without support. Further, the record, specifically the medical consultative examination of Dr. Carper, notes that R. G. experiences poor tolerance to frustration. Dkt. No. 57, p. 17. But there is no logical bridge drawn between these experiences and the ultimate determination that R.G. has a less than marked limitation in the domains of acquiring and using information, attending and completing tasks and interacting with others.

The evidence suggests R. G.'s academic success—and, more broadly, his ability to focus, to complete classroom assignments, and to interact with peers—is linked to the special education services and accommodations he received. The ALJ did not meaningfully address R. G.'s grades in the context of his need for a structured setting; nor did the ALJ analyze "the degree of limitation in functioning [R. G.] ha[s] or would have outside the structured setting." 20 C.F.R. § 416.924a(b)(5)(iv)(C). Instead, the ALJ appears to have concluded that R. G.'s academic progress alone was enough to find that he could attend and complete tasks in a manner consistent with his age. The regulations specifically reject the idea that "good performance in a special education setting" necessarily means that a child is "functioning at the same level as other children [his] age who do not have impairments." 20 C.F.R. § 416.924a(b)(7)(iv). The ALJ's decision shows that he was aware of the evidence that R. G. had an Individualized Education Program and was placed in a special-education classroom prior to high school. But the ALJ merely acknowledged the evidence; he did not explicitly analyze R. G.'s structured setting and accommodations, which leaves the Court unable to discern how the ALJ weighed those considerations when he concluded that R. G. had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting with others. *See Moss v. Comm'r of Soc. Sec.*, No. 18-CV-365, 2020 WL 896561, at *3 (W.D.N.Y. Feb. 25, 2020) ("The ALJ's analysis ... must be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence.").

Given the above, the Court finds remand to the Commissioner for additional consideration is warranted, so the ALJ can apply the correct legal standards to support his finding by substantial evidence, particularly as it pertains to the domains of acquiring and using information, attending and completing tasks, and interacting with others.

## VIII. Recommendation

This Court finds the ALJ's denial of social security benefits to R. G. is based on an incomplete analysis that does not address the function support of R. G. as he transitioned to high school. The Court finds that the correct legal standards were not applied by the ALJ, and that the decision of the Commissioner is therefore not supported by substantial evidence. The Court **RECOMMENDS** the final decision of the Social Security Administration denying benefits be **REVERSED**. Further, this Court **RECOMMENDS** this case be remanded to the Social Security Administration for additional proceedings consistent with this Report and Recommendation.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with United States District Judge Rolando Olvera. 28 U.S.C. § 636(b)(1). When filing an objection, a party must object to specific facts or legal findings in this Report and Recommendation. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a *de novo* review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a *de novo* review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Signed on September 12, 2025.

Karen Betancourt
United States Magistrate Judge